UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ETHELYN ROBLIN,

Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

Case No.  23-cv-01828-RFL (RMI)

**ORDER RE: PLAINTIFF'S MOTION TO INSTITUTE A FIRST-LOOK PROCEDURE**

Re: Dkt. No. 25

Now pending before the court is Plaintiff's Motion to Institute a First Look Procedure Regarding the Subpoenaed Kaiser Permanente Records (dkt. 25). Defendant has responded (dkt. 28) and Plaintiff has replied (dkt. 30). Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. For the reasons that follow, Plaintiff's motion is denied.

Plaintiff alleges that on Sunday, February 21, 2021, she was injured near the entrance of a Costco store when an employee rammed her in the back while pushing a long train of shopping carts. *See* Pl.'s Mot. (dkt. 22-1) at 1. She contends that the collision caused her to suffer an elbow fracture, injury to her lower back, and a traumatic brain injury. *Id.* She also submits that a brain MRI, taken after the incident, reveals some degree of intra-cranial bleeding (which she refers to as "microbleeds"), and adds that "[t]he symptoms of her mild traumatic brain injury include headache, difficulty in concentration, slow ability to process information, sensitivity to light, and psychological issues: depression and post-traumatic stress disorder ("PTSD")." *Id.* at 1-2. Plaintiff – who works as a registered nurse – states that the elbow fracture resulted in an inability to work from February to April of 2021; and, that after returning to work in April of 2021, "she has

noticed that she gets flashback[s] when there are many people in the hospital, triggering the trauma she sustained at Costco." *Id*. at 2. This caused her to secure a reduction in the number of hours she works – to wit, reducing her shift from 30 hours per week, to 26 hours per week. *Id*. Plaintiff has sued under theories of negligence and premises liability, alleging that she has suffered wage loss, medical expenses, and loss of earning capacity; she also seeks to recover the reasonable value of household services and reasonable value of nursing services provided by her family members. *See* Notice of Removal, Exh. A (Complaint) (dkt. 3) at 12.

Plaintiff's pending motion takes exception with the fact that Defendant served a third-party subpoena on Kaiser Permanente for Plaintiff's medical records (and associated billing records) from February 21, 2011 (10-years before the events underlying this lawsuit) until the present. *See* Pl.'s Mot. (dkt. 22-1) at 2. Plaintiff reportedly served objections (couched as falling under a general privacy right, and under the doctor-patient evidentiary privilege) as to "the records on unrelated medical conditions," and proposed a first-look procedure (which Defendant reportedly rejected); Plaintiff also notes that "Defendant informed Plaintiff that it has received the subpoenaed Kaiser records, despite Plaintiff's objections, but assured Plaintiff that Defendant will not look at the records until the Court's ruling" on Plaintiff's motion. *See id*.

Plaintiff contends that the only body parts at issue in this litigation are her left elbow, her lower back, and her head. *Id*. at 3. She further asserts that the only mental conditions at issue are depression and PTSD. *Id.* She adds that because the records subpoenaed by Defendant are not limited to these conditions and body parts, and because the records span a 10-year period, there is a danger that her privacy rights will be violated by Defendant (or Defendant's counsel) viewing medical and billing information that she contends to be outside the scope of this litigation. *Id*. at 3-4. She suggests that a first-look procedure – in in which her counsel gets a first look at the records produced, with authority to redact unrelated information and to produce a privilege log – is necessary to preserve her privacy rights. *Id*. at 4.

For a number of reasons, the court finds Plaintiff's approach to be disagreeable. At a fundamental level, the court disagrees with Plaintiff's assertion that the only body parts at issue in this litigation are her left elbow, her lower back, and her head; and that the only mental conditions

United States District Court
Northern District of California

1   at issue are depression and PTSD. Plaintiff alleges having suffered wage loss, loss of earning

2   capacity, the need for household services and nursing services provided by family members, and

3   certain mental disturbances which she tethers to the presence of "many people" at her workplace.

4   She has also alleged suffering from headaches, experiencing difficulty concentrating, experiencing

5   deficits in her ability to process information, and a sensitivity to light. On this basis, the court

6   finds that Defendant should be allowed to seek broad-based discovery as to any medical or

7   psychological condition with which Plaintiff may have been afflicted during the period covered by

8   the subpoenas in question because such information appears to be reasonably calculated to

9   produce information that would be relevant to both causation and damages issues. As to Plaintiff's

10  privacy rights, the court finds that those interests can be adequately secured by a protective order.

11  On the other hand, Plaintiff's suggested first-look procedure appears to the court to be attended

12  with a risk of causing prejudice to Defendant by giving Plaintiff a unilateral ability to withhold all

13  information she deems to be unrelated and irrelevant. As for any notion that the court could make

14  such determinations by viewing such material *in camera* – this idea is unworkable (1) because

15  Defendant would not know what information has been kept from it, and therefore would not be

16  able to effectively complain; and, (2) because it would essentially require the court to

17  micromanage Plaintiff's redactions by independently reviewing the entirety of the medical records

18  and scrutinizing each redaction while making countless individual relevance determinations as to

19  each and every item Plaintiff's counsel will have redacted. This approach is unworkable and

20  unnecessary because, as stated, Plaintiff's privacy interests can be more efficiently secured under

21  the terms of a protective order.

22        By way of illustration, the court directs Plaintiff's attention to *Haqq v. Stanford Hosp. &*

23  *Clinics*, NO. C 06-05444 JW (RS), 2007 U.S. Dist. LEXIS 24865, *5 (March 22, 2007). In that

24  case, Judge Seeborg was faced with a similar request in an employment discrimination action

25  where the defendants had issued broad-based subpoenas to various third parties seeking the

26  plaintiff's employment, academic, and medical histories. *Id*. at *1. As is the case here, the plaintiff

27  in *Haqq* argued that utilizing her proposed first-look procedure would balance her privacy rights

28  against defendants' discovery rights. *Id*. Similarly, the proposal in that case would have given

1    Haqq's counsel a "first look" at any documents produced in response to the subpoenas, as well as

2    the right to unilaterally determine that any documents deemed inappropriate for production not be

3    turned over to defendants. *Id*. In *Haqq*, the court ultimately found that a more reasonable

4    procedure would involve defendants receiving the entirely of the information "on an 'attorney

5    eyes only' basis for not less than 60 days, under a general protective order to be entered upon a

6    stipulation between the parties . . . [wherein] Haqq would then have the opportunity to seek a

7    protective order to preclude further dissemination of any of the documents as to which counsel

8    were unable to agree should continue to be limited to 'attorney eyes only.'" *Id*. at *6-*7. The court

9    added that "[w]hile such a procedure may still result in further motion practice, it permits

10    meaningful meet and confer discussions between counsel to an extent that would not be possible if

11    defense counsel only had in hand the information on a 'privilege log.'" *Id*. at *7. The undersigned

12    agrees with this approach. *See also Wheat v. Wal-Mart Assocs.*, 2023 U.S. Dist. LEXIS 220057 at

13    *9, n.3 (C.D. Cal. December 11, 2023) (similarly rejecting "Plaintiff's 'first look' proposal, which

14    implicate[d] a review of the subpoenaed records by Plaintiff's counsel for purported relevance.")

15         While the parties have already entered into a general stipulated protective order (dkt. 16),

16    the Parties are herewith **ORDERED** to promptly meet and confer regarding the form and content

17    of a supplemental stipulated proposed protective order (*i.e.*, one with an attorney-eyes-only

18    provision) within two weeks of the date of this order. In the event counsel are unable to agree as to

19    the form of such order, they shall jointly submit their respective proposed orders to the effect

20    described herein no later than Wednesday, January 3, 2024, with a joint cover letter, not to exceed

21    three pages, specifying and describing the points of disagreement and divergence. Following the

22    entry of that supplemental protective order, Defendant's counsel shall treat all documents

23    produced under the subpoenas as "attorney eyes only" for a period of not less than 60 days, during

24    which time, the Parties shall meet and confer in good faith to determine the appropriate level of

25    continued protection under the supplemental protective order for each of the documents produced.

26    Accordingly, for the reasons stated herein, Plaintiff's relevancy objections are **OVERRULED**,

27    and Plaintiff's Motion (dkt. 25) is **DENIED**.

28    //

1      **IT IS SO ORDERED.**

2  Dated: December 19, 2023

3

4                                      _____

5                                    ROBERT M. ILLMAN
                                     United States Magistrate Judge

United States District Court
Northern District of California